No. 98-553

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 185

295 Mont. 306

983 P.2d 955

CHESTER R. BAUER,

Petitioner and Appellant,

v.

STATE OF MONTANA,

Respondent and Respondent.

No

APPEAL FROM: District Court of the Seventeenth Judicial District,

In and for the County of Blaine,

The Honorable John C. McKeon, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

William F. Hooks, Montana Appellate Defender Office, Helena, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General,

Cregg W. Coughlin, Assistant Attorney General, Helena, Montana

Mark Harshman, Blaine County Attorney, Chinook, Montana

Submitted on Briefs: April 22, 1999

Decided: August 3, 1999

Filed:

_____

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

**¶1. Chester R. Bauer (Bauer) appeals from the denial of his petition for post-conviction relief by the Seventeenth Judicial District Court, Blaine County. We reverse and remand for resentencing.**

**¶2. The sole issue on appeal is whether the District Court erred in concluding that Bauer was not entitled to resentencing on due process grounds.**

Factual and Procedural Background

**¶3. In 1983, Bauer was charged with and convicted of the felony offenses of Sexual Intercourse Without Consent and Aggravated Assault in the Second Judicial District Court, Silver Bow County. Pursuant to those convictions, Bauer was sentenced to a term of twenty years in the Montana State Prison for the first charge and a term of ten years for the second charge, with the two sentences to be served concurrently. Bauer's sentence for the offense of Sexual Intercourse Without Consent was also enhanced with a ten-year term for the use of a weapon, to be served consecutively to the other sentences.**

**¶4. In 1991, roughly eight years after Bauer had begun serving his Silver Bow County sentences, he was charged with Intimidation, a felony, in the Third Judicial District Court, Powell County. Bauer subsequently pleaded guilty to the intimidation charge and was sentenced to a term of five years in the Montana State Prison, to be**

served consecutively to the Silver Bow County sentences.

¶5. At some point after the 1991 riots at the Montana State Prison, the State of Montana (the State) transferred Bauer to the Blaine County Jail. Thereafter, on October 10, 1995, the State charged Bauer with three offenses--Sexual Intercourse Without Consent, Intimidation, and Escape--arising out of an incident with a female inmate at the Blaine County Jail. Following a jury trial, Bauer was convicted on all three charges in March of 1996.

¶6. On March 20, 1996, Bauer's counsel moved the District Court to inquire into possible jury misconduct. Bauer argued that Blaine County media had represented that he had been previously convicted of the crime of Sexual Intercourse Without Consent, and that this information had possibly affected the deliberations of the jury, which was not sequestered during the course of trial. A hearing was held and the court granted Bauer's request for an inquiry into possible jury misconduct. The court established a procedure by which each juror was asked, in writing, if that juror had heard or been made aware of the news broadcasts during Bauer's trial, and, if so, whether he or she was able to disregard that information. When the results of the survey were tallied, "[s]ome of the twelve jurors" had "responded in the affirmative" to the former question; none of those jurors, however, answered the latter question negatively.

¶7. Bauer contended that the affirmative response of some jurors to the first question was sufficient to establish a presumption of juror misconduct and prejudice, and that he should therefore be entitled to a new trial. The State responded that those same jurors' negative response to the second question--that the news reports had not affected their deliberations--rebutted any presumption of prejudice. The District Court set an evidentiary hearing on the matter for August 26, 1996.

¶8. On the day of the scheduled evidentiary hearing, the parties filed a Stipulation which addressed the alleged jury misconduct as well as sentencing considerations. Pursuant to the Stipulation, the State agreed to make specific sentencing recommendations. The State recommended that Bauer "receive a maximum sentence on any count of 20 years in the Montana State Prison with ten years of that sentence suspended," and recommended that all of Bauer's sentences be ordered to run concurrently. The State also agreed in the Stipulation to "not recommend a fine," but reserved the right to recommend "conditions of probation."

**¶9. Furthermore, the State agreed to make a specific recommendation as to when, in relation to his 1983 Silver Bow County sentences, Bauer should begin serving his Blaine County sentences. This recommendation acknowledged that Bauer was in the process of challenging his 1983 Silver Bow County convictions and, thus, turned upon a condition subsequent to the actual imposition of sentence for the Blaine County convictions. That is, the State conditionally agreed that if Bauer were successful in overturning his 1983 Silver Bow County convictions,**

the sentence imposed by the court in this cause should run from the date that the information was filed against [Bauer] . . . . If [Bauer] is not successful in having his 1983 conviction overturned then the sentence will commence at the time [Bauer] begins serving his sentence for intimidation as a result of a conviction in 1991 while in the Montana State Prison.

**¶10. Under the Stipulation, if the sentencing court adopted these recommendations, Bauer agreed to forfeit his right to appeal. However, this agreement was not binding if the District Court did not adopt the State's recommendations:**

[I]n exchange for this recommendation to the Court [Bauer] will give up his rights to an appeal in this case for any reason or on any grounds <u>including post-conviction relief, provided however that if the Court imposes a sentence upon [Bauer] greater than that which the state herein has agreed to recommend to the Court then [Bauer] shall be entitled to pursue such appeal rights as he may see fit.</u>

**¶11. Pending sentencing, Bauer agreed to postpone the evidentiary hearing on jury misconduct. The District Court ordered the preparation of a presentence investigation report (PSI), which was prepared and submitted prior to the imposition of Bauer's sentences. The PSI expressly referred to Bauer's prior convictions and sentences in Silver Bow County, noting that Bauer had been convicted of the felony offenses of Sexual Intercourse Without Consent and Aggravated Assault in 1983. The author of the PSI recommended a "lengthy sentence in Montana State Prison" with a portion of that sentence suspended, stating particularly that "Mr. Bauer has a previous conviction for Sexual Intercourse Without Consent and this is the reason that Mr. Bauer is an inmate of Montana State Prison."**

**¶12. In its Judgment and Sentence issued October 11, 1996, the District Court**

expressly considered the PSI in sentencing Bauer. Although the court sentenced Bauer in substantial compliance with the Stipulation, it exceeded the State's sentencing recommendations by imposing a monetary fine on Bauer. The court, noting that Bauer was challenging his 1983 convictions in Silver Bow County, also provided that if Bauer were successful in having those convictions set aside, then his sentences would run from the date of the Judgment and Sentence and he would be credited with any time served from the date of the filing of the Information to the date of the imposition of the Blaine County sentences.

¶13. In May of 1997, Bauer filed an Amended Motion for New Trial or Other Appropriate Relief in the Second Judicial District Court, Silver Bow County, arguing in part that newly discovered DNA evidence obtained after his 1983 convictions exonerated him. Subsequently, the State filed a Notice indicating that it would not oppose Bauer's motion for a new trial, and that it would not seek to retry Bauer in the event that the 1983 convictions and sentences were vacated. On September 22, 1997, the Second Judicial District Court, Silver Bow County, issued its Order Vacating Convictions and Sentences, in which it found that Bauer was "actually innocent of the crimes with which he was charged, tried, convicted and sentenced." Based largely on the newly discovered evidence demonstrating that Bauer was "not guilty of the crimes," the court adjudged Bauer's 1983 Silver Bow County convictions and sentences "void." Accordingly, the court "vacated" Bauer's convictions and sentences and ordered the charges "dismissed with prejudice."

¶14. In March of 1998, Bauer filed a Petition for Post-Conviction Relief in the Seventeenth Judicial District Court, asserting that his state and federal constitutional rights to due process had been violated when the court had relied on the now incorrect information about his prior Silver Bow County convictions in imposing his Blaine County sentences. The State opposed Bauer's petition.

¶15. The District Court denied post-conviction relief without a hearing. First, the court concluded that, since it had sentenced Bauer in conformity with the State's sentencing recommendations, Bauer had waived any right to post-conviction relief pursuant to the Stipulation. Second, the District Court, while acknowledging that it had considered the PSI in imposing sentence, reasoned that Bauer's 1983 Silver Bow County convictions "were in serious jeopardy" at the time of sentencing and that the vacation of those convictions "was anticipated" when the court imposed Bauer's Blaine County sentences. The District Court concluded that it "did not rely on those

convictions when imposing sentence in this matter" and, therefore, that Bauer was not entitled to resentencing on due process grounds.

Discussion

¶16. Did the District Court err in concluding that Bauer's due process rights were not violated since it did not rely on Bauer's prior convictions in imposing the current sentences?

¶17. We review a district court's denial of a petition for post-conviction relief to determine whether the court's findings are clearly erroneous and whether its conclusions of law are correct. Bone v. State (1997), 284 Mont. 293, 302, 944 P.2d 734, 739-40.

¶18. We note at the outset that both Bauer and the State agree that the District Court erred in concluding that Bauer had waived his right to seek post-conviction relief. The District Court's sentence exceeded the State's sentencing recommendations in that the court imposed a monetary fine on Bauer, despite the fact that the State did "not recommend a fine" in the Stipulation. Thus, pursuant to the terms of that agreement, the District Court imposed "a sentence upon [Bauer] greater than that which the state" recommended, thereby preserving Bauer's "rights to an appeal . . . for any reason . . . including post-conviction relief . . . ." The parties being in agreement, we conclude that the court erred in concluding that Bauer had waived his right to seek post-conviction relief.

¶19. The State, while acknowledging that Bauer did not waive his right to seek post-conviction relief, argues that the District Court did not err in denying Bauer's post-conviction petition on the merits since the court did not rely on the 1983 Silver Bow County convictions in imposing Bauer's Blaine County sentences. Bauer responds that the District Court erred in failing to resentence him once he was successful in proving his innocence of the prior convictions. According to Bauer, his subsequent exoneration of the 1983 Silver Bow County crimes rendered that evidence sentencing "misinformation" in violation of due process.

¶20. As Bauer points out, under both the Fourteenth Amendment to the United States Constitution and Article II, Section 17 of the Montana Constitution, a

**defendant is protected from a sentence predicated on misinformation about that defendant's criminal history. Pursuant to the federal constitution,**

[w]hile not every type of misinformation will justify relief, a sentence cannot stand if it is based on assumptions concerning the defendant's criminal record that are "materially false," Townsend v. Burke, 334 U.S. 736, 741, 68 S.Ct. 1252, [1255,] 92 L.Ed 1690[, 1693] (1948), or if it is founded "in part upon misinformation of constitutional magnitude." United States v. Tucker, 404 U.S. 443, 447, 92 S.Ct. 589, 592, 30 L.Ed.2d 592 [, 596] (1972).

United States v. Powell (4th Cir. 1973), 487 F.2d 325, 328; *see also* United States v. Messer (9th Cir. 1986), 785 F.2d 832, 834 (noting that a defendant's due process rights are violated when a court relies on "materially false or unreliable information in sentencing").

**¶21. Similarly, this Court has concluded that "[a] convicted defendant . . . has a due process guarantee against a sentence predicated on misinformation." State v. Orsborn (1976), 170 Mont. 480, 486, 555 P.2d 509, 513; *accord* State v. Redding (1984), 208 Mont. 24, 27, 675 P.2d 974, 976 (affirming that "due process precludes a sentence from being predicated on misinformation"). Thus, due process "prohibits a court from relying on materially false information when sentencing a defendant." Bishop v. State (1992), 254 Mont. 100, 110, 835 P.2d 732, 738.**

**¶22. Under the due process guarantee, every person must be given an opportunity to explain, argue, and rebut any information--including presentencing information-- that may lead to a deprivation of life, liberty, or property. *Redding*, 208 Mont. at 28, 675 P.2d at 976. In the sentencing context, the purpose of this rule is, in part, to fully effectuate the due process guarantee of "accurate information before the sentencing judge." *Redding*, 208 Mont. at 30, 675 P.2d at 977. However, due process does not protect against all misinformation in sentencing; the inquiry turns on whether the sentence was premised on materially false information. *See Powell*, 487 F.2d at 328. Since due process does not guard against "insignificant or non-prejudicial" misinformation introduced at sentencing, a defendant is under an "affirmative duty" to show that the alleged misinformation is materially inaccurate or prejudicial before a sentence will be overturned by this Court. *Redding*, 208 Mont. at 30, 675 P.2d at 977; State v. Pearson (1985), 217 Mont. 363, 368-69, 704 P.2d 1056, 1060.**

¶23. In *Orsborn*, for example, we concluded that the defendant's due process rights had not been violated when the sentencing judge referred to facts outside of the presentence investigation report at a presentence hearing, but provided the defendant an opportunity to explain or rebut that information at the hearing. *Orsborn*, 170 Mont. at 484, 555 P.2d at 512. Due process was not offended in *Orsborn* because of three considerations: (1) the defendant was represented by counsel at the time of the introduction of the alleged misinformation; (2) defendant was provided an opportunity to rebut that information; and (3) defendant, rather than rebutting the information, chose to affirm its accuracy. *Orsborn*, 170 Mont. at 486, 555 P.2d at 513. Under those circumstances, we held that, since the court had provided the defendant with an opportunity to rebut or explain the information, any danger of relying on misinformation in sentencing had been averted by the sentencing judge. *Orsborn*, 170 Mont. at 486, 555 P.2d at 513.

¶24. Furthermore, we have recognized that where a sentencing court is found not to have relied on improper or erroneous information in sentencing a criminal defendant, there is " 'nothing to correct or rebut' " and, therefore, that the defendant is not entitled to resentencing on due process grounds. *See* Coleman v. Risley (1983), 203 Mont. 237, 250-51, 663 P.2d 1154, 1162, *quoting* United States v. Hawkins (5th Cir. 1981), 658 F.2d 279, 290; *accord Bishop*, 254 Mont. at 108-10, 835 P.2d at 737-38 (affirming that a defendant must prove that the information relied on by the sentencing court in imposing sentence was materially false or erroneous to warrant relief). The State asks that we reach a similar result here, arguing that the District Court specifically found that it did not rely on Bauer's prior Silver Bow County convictions in imposing his Blaine County sentences, and that Bauer has failed to adduce any evidence to show that the court's finding of non-reliance was clearly erroneous. Furthermore, the State contends that Bauer was not only given an opportunity to argue the consequences of a possible future vacation of the 1983 convictions at sentencing for the current offenses, but that he also specifically bargained--via the Stipulation--for the sentencing result obtained and should not be heard to now complain.

¶25. The State's position is flawed on procedural grounds. Bauer cannot be said to have been given a meaningful opportunity to be heard concerning the vacation of his prior convictions when those convictions were still legally valid at the time of sentencing. Practically speaking, Bauer could not demonstrate the actual invalidity of his prior convictions at the time of sentencing in this matter. Indeed, as Bauer points

out, counsel was not appointed to represent him in his petition for post-conviction relief from the Silver Bow County convictions and sentences until after Bauer had been convicted of the Blaine County offenses, nor was Bauer's amended motion for relief in the Silver Bow County case filed until after Bauer had already been sentenced in this matter. Under these circumstances, Bauer had not thoroughly developed his claims for relief from the 1983 Silver Bow County convictions and sentences until well after the time when the District Court imposed the Blaine County sentences. Thus, the District Court did not have a full opportunity at the time of imposing sentence to consider the procedural and substantive consequences of the actual vacation of Bauer's 1983 convictions and sentences, nor the specific grounds upon which such post-conviction relief was granted by the Silver Bow County court. This is a particularly poignant observation given that Bauer's prior convictions were not vacated on mere technical or procedural grounds; rather, Bauer was adjudged innocent of the Silver Bow County offenses based largely on the newly discovered DNA evidence excluding him as the assailant.

¶26. Moreover, as Bauer indicates, the District Court was statutorily required to consider the PSI prior to imposing sentence. *See* § 46-18-111(1), MCA (1995). Bauer asserts that the court properly did just that. The author of the PSI expressly referenced Bauer's 1983 Silver Bow County convictions and sentences, and recommended a lengthy prison sentence based at least in part on those prior convictions. In its Judgment and Sentence, the District Court considered the PSI in imposing Bauer's Blaine County sentences to the extent that the court expressly referred to the information contained in the PSI that Bauer had previously been convicted of the Silver Bow County offenses.

¶27. We choose to side with fundamental fairness. We cannot say, under the circumstances of this case, that Bauer has been accorded the protection from material misinformation due a criminal defendant at sentencing. A criminal defendant cannot be heard to complain where the information in a presentence report is true; however, where a petitioner can show that the sentence was predicated on something materially erroneous in the presentence report, that petitioner is entitled to resentencing. *See* Spurlock v. Christ (1980), 188 Mont. 449, 454, 614 P.2d 498, 501. Given that Bauer's prior Silver Bow County convictions and sentences were still valid at the date of the Blaine County sentencing and were particularly highlighted by the author of Bauer's PSI and explicitly considered by the District Court in its Judgment and Sentence, we cannot fairly conclude that Bauer was given

a sufficient opportunity to be heard and to rebut that misinformation <u>at the time of sentencing</u>.

¶28. In fact, at Bauer's sentencing for the Blaine County convictions, the evidence of his prior Silver Bow County convictions did not constitute materially false information--it was correct information. When Bauer's prior Silver Bow County convictions were vacated subsequent to the imposition of his Blaine County sentences, however, what was correct information at the time of sentencing became misinformation after the fact. While there is evidence that the District Court and the parties anticipated the possible reversal and vacation of Bauer's prior convictions and sentences, we decline to speculate as to how that anticipatory posture might have affected the actual sentence imposed by court.[(1)] And, because of the identity between Bauer's prior Silver Bow County conviction for Sexual Intercourse Without Consent and his current Blaine County conviction for the exact same offense, it would be callous to conclude that the explicit inclusion of his prior convictions and sentences in the PSI--evidence considered by the District Court at sentencing--was either immaterial to the court's sentence or non-prejudicial to Bauer.

¶29. Were we to accept the State's position and hold that Bauer must now refute the court's "finding"[(2)] that it did not rely on those prior convictions in imposing the sentence in this matter, we would be imposing an "impossible burden" on a petitioner to cross-examine, "dislodge," and explain away the inner-workings of a sentencing judge's mind. *Cf*. State v. Stewart (1977), 175 Mont. 286, 305, 573 P.2d 1138, 1148. Realistically, such a burden would be difficult, if not impossible, to meet in a case like the one *sub judice*, notwithstanding the sentencing court's apparent reliance on materially false information. To assume that a criminal defendant could, as a practical matter, get at the mental processes of a sentencing judge's mind--at least where, as here, those thought processes are not evident from the sentencing record--would be inconsistent with the truth-seeking purpose of due process. "Our system is based on the premise that the confrontation, cross-examination and debate characteristic of an adversarial system is elemental, if not essential to its truth-seeking function." *Redding*, 208 Mont. at 27, 675 P.2d at 976. However, that truth-seeking function would be substantially derogated were we to allow the misinformation of Bauer's prior, invalid convictions to go unchallenged before the District Court by denying Bauer the opportunity to be resentenced on the basis of materially accurate information. *Cf. Redding*, 208 Mont. at 27-28, 675 P.2d at 976.

¶30. We conclude that Bauer is entitled to be resentenced as a matter of fundamental fairness. "Illegally depriving a [person] of his [or her] liberty for a period of time is a serious matter, and . . . due process requires that [the defendant] be given the opportunity of presenting this fact for consideration to the sentencing court" at resentencing. Bauers v. Yeager (D.N.J. 1966), 261 F.Supp. 420, 425 (footnote omitted). *Bauers* involved a defendant who served sixteen months on an illegal prior sentence before successfully having that conviction and sentence expunged from his criminal record. At the time of sentencing for a subsequent offense, however, the defendant's prior conviction was still valid. Thus, "because of the timing of the suit brought to have the [prior] sentence expunged, [the defendant] could not present the pertinent fact to the court at the time of his sentencing . . ." for the subsequent offense. *Bauers*, 261 F.Supp. at 425.

¶31. As in *Bauers*, the denial of due process in this case came about primarily as a matter of timing. *Bauers*, 261 F.Supp. at 425 ("[T]he denial involved here was due mainly to the fact that petitioner's [prior] sentence was expunged subsequent to the imposition of his present sentence . . . ."). We agree with Bauer that a sentence should not be imposed on the basis of conjecture or speculation about future contingencies, but only on the basis of concrete and accurate information before the sentencing judge. Since Bauer's prior convictions were not vacated until after the imposition of his current sentences, Bauer was not accorded an opportunity to present the actual vacation of his prior convictions and sentences to the District Court at the time of sentencing.

¶32. We hold that the District Court erred in denying Bauer's request for resentencing. Accordingly, we vacate Bauer's Blaine County sentences and remand for resentencing. Given the procedural posture of this case, we deem it appropriate to remand this matter for resentencing before a new district court judge.

¶33. Reversed and remanded.


/S/ W. WILLIAM LEAPHART

We concur:

/S/ J. A. TURNAGE

/S/ KARLA M. GRAY

/S/ TERRY N. TRIEWEILER

/S/ JAMES C. NELSON

1. [1] Nor, in light of the fact that the District Court exceeded the terms of the parties' sentencing stipulation, can we accept the State's argument that Bauer "bargained for" the sentencing result obtained and, therefore, should not be heard to complain on appeal. In any event, the parties' and the court's awareness that the prior convictions might be vacated would not, in our opinion, cure or excuse the due process violation in this case.

2. [2] The State suggests that Bauer has adduced no evidence to refute the District Court's "finding" that it did not rely on the 1983 convictions in imposing the sentences in this matter. Bauer, however, refutes the State's claim that the court made any such a finding. While it is unclear from the District Court's Order Denying Post-Conviction Relief whether the court intended to make a finding of fact as to its non-reliance on the prior--now invalid--convictions, we think that the court's observation was more in the nature of a conclusion of law or was simply part-and-parcel of its reasoning process. It does not appear to be in the nature of a decision upon a question of fact resulting from a judicial investigation into the record. *See* State v. Hall (1988), 234 Mont. 57, 62, 761 P.2d 1283, 1285-86 (quoting Black's Law Dictionary (5th ed. 1979)) (defining a finding of fact).